**LORI HARPER SUEK**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone:    (406) 657-6101**
**FAX:      (406) 657-6989**
**E-Mail:   Lori.Suek@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **EUGENIA ANN ROWLAND,** <br><br> Defendant. | CR 14-27-BLG-SPW <br><br><br> **AMENDED OFFER OF PROOF** |

The United States of America, represented by Lori Harper Suek, Assistant

United States Attorney for the District of Montana, files its offer of proof.

1

## THE CHARGE

The defendant, Eugenia Ann Rowland, is charged by superseding indictment with first degree murder, in violation of 18 U.S.C.§§ 1153(a), 1111(a), and 2 (count I) and second degree murder, in violation of 18 U.S.C. §§ 1153(a), 1111(a), and 2 (count II).

## PLEA AGREEMENT

The defendant will plead guilty to count II of the superseding indictment. This resolution of the case without a plea agreement is the most favorable resolution for the defendant. *See Missouri v. Frye* __U.S.__, 132 S. Ct. 1399 (2012).[1]

## ELEMENTS OF THE CHARGE TO WHICH SHE WILL PLEAD

In order for the defendant to be found guilty of the charge of second degree murder, as charged in count II of the superseding indictment, the United States must prove each of the following elements beyond a reasonable doubt:

**First**, the defendant is an Indian person;

**Second**, the crime occurred in Indian country;

**Third**, the defendant unlawfully killed H. H.; and

**Fourth**, the defendant killed H.H. with malice aforethought.

---

[1] The United States does not intend on proceeding to trial on count I and will move for dismissal of count I without prejudice at the change of plea proceeding.

To kill with malice aforethought means to kill recklessly with extreme disregard for human life.

The defendant can also be guilty of second degree murder under an aiding and abetting theory of liability. The elements of aiding and abetting second degree murder are:

**First**, second degree murder was committed by someone;

**Second**, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of second degree murder;

**Third**, the defendant acted with the intent to facilitate second degree murder; and

**Fourth**, the defendant acted before the crime was completed.

## PENALTY

The charge carries a penalty of life imprisonment, a $250,000 fine, and five years supervised release.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

On the night of July 3, 2013, and into the early morning hours of July 4, 2013, the victim, Hanna Harris, was in the company of Wadda and Rowland, common-law husband and wife. Harris was last seen alive at approximately 1:30 a.m., on July 4, 2013, captured on video surveillance camera footage at the Cheyenne Depot, a convenience store in Lame Deer. Harris can be seen in the video getting into her car and driving away. Rowland is captured on video getting into the front passenger seat of the car. Investigators determined that Wadda was in the car, in the back seat, by himself.

Relatives of Harris were babysitting her baby on the night of July 3rd and into July 4th. Harris was still breast feeding. When Harris failed to come home on July 4, 2013, her relatives reported her missing to local BIA law enforcement. The case was initially treated as a missing person investigation.

Wadda and Rowland were interviewed multiple times by BIA law enforcement between July 4th and July 7th, 2013. Summarizing those interviews, Wadda and Rowland told investigators that they were drinking and partying with Harris on the night of July 3rd. They attended a fireworks display and street dance together, and then all three went to the Jimtown bar. Wadda purchased alcohol and all three left together. Video camera surveillance footage shows all three at the Jimtown bar. They then drove to the Cheyenne Depot and then to

4

Ethylene Jefferson's property, on Muddy Creek road, outside of Lame Deer, on the Northern Cheyenne Indian Reservation. Jefferson is Wadda's aunt.

Wadda's and Rowland's accounts of what happened that night while they were at the Jefferson property changed throughout the successive interviews, but both Wadda and Rowland insisted that they did not know what, if anything happened to Harris after they went to bed in one of the trailers during the early morning hours of July 4th. Rowland said that she blacked out from intoxication at some point during the night, and that she had no recollection of Harris leaving or even of herself going to bed. Rowland said that she was surprised and concerned when she and Wadda woke up the next morning and discovered Harris' car still parked near the property.

The BIA notified the FBI about the case on the night of July 7, 2013. On the morning of July 8, 2013, during a search of Jefferson's property, investigators found one of Harris's Nike tennis shoes under a trailer, and a sash that Harris was wearing at the street dance on the night of July 3rd. On the night of July 8, 2013, Harris's body was found near the Lame Deer rodeo grounds. Her body was positioned face down with her buttocks slightly elevated and her arms stretched out in front of her. Her pants were unzipped and unbuttoned and her pants and underwear were pushed down near her knees. Her shirt and bra were pushed up

5

exposing her breasts. The body was badly decomposed and maggot-ridden. Given the advanced stage of decomposition, no cause of death could be determined although positional asphyxia could not be ruled out as a possible cause of death. A sexual assault examination was performed at the autopsy, but there were no results again due to the decomposition.

Before Harris' body was found, on July 8, 2013, Wadda and Rowland left the Northern Cheyenne reservation and traveled to stay with Wadda's relatives near the Wind River reservation in Wyoming. After Wadda and Rowland left for Wyoming, law enforcement learned that Wadda borrowed Rowland's son's car, on July 5, 2013, and that Wadda returned the car with a very strong odor emanating from the back seat. Later in the investigation, a search was conducted of the car, and Harris' DNA was found on a rear seat cushion taken from the car. Wadda later admitted that he used Rowland's son's car to move the body to the rodeo grounds. Rowland contacted law enforcement while in Wyoming and stated that Wadda admitted he moved Harris's body. She claimed that she knew nothing about Wadda moving the body until he told her what he had done while they were in Wyoming.

Both Rowland and Wadda were re-interviewed throughout the Fall of 2013 and into the Winter of 2014. Rowland never admitted to any wrongdoing to law

enforcement and, in fact, claimed that she was passed out and had no knowledge of what happened to Harris. She claimed that she knew nothing about Wadda moving the body.

In January 2014, Rowland was staying at a flop house in Rapid City, South Dakota. While there, she drank with her former sister-in-law. The sister-in-law told investigators, and then testified in front of the grand jury, that while she was drinking with Rowland, Rowland made statements to her admitting that she and Wadda were responsible for the death of Hanna Harris.

Rowland is an enrolled member of the Oglala Sioux Tribe in South Dakota, a federally recognized tribe.

DATED this 30th day of October, 2014

                      MICHAEL W. COTTER
                      United States Attorney

                      */s/ Lori Harper Suek*
                      LORI HARPER SUEK
                      Assistant U.S. Attorney